## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

MICHAEL IRVING SELLEY,

        Movant,

   v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 2:16-cv-88

(Case No.: 2:15-cr-1)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On June 25, 2015, this Court sentenced Michael Irving Selley ("Selley") to ninety-seven (97) months' imprisonment after he pleaded guilty to possession of child pornography. Selley, who is currently incarcerated at the Federal Correctional Institution-Elkton in Lisbon, Ohio, has now filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 57.)[1] Selley contends that his retained trial counsel, Mr. James B. Smith, rendered ineffective assistance of counsel during the sentencing phase of his case. (Doc. 57-1.) Specifically, Selley contends that Mr. Smith failed to object to a two-point offense level enhancement that Selley received in the calculation of his advisory Guidelines' sentencing range due to Selley having distributed child pornography. (Id.) However, Selley has failed to demonstrate that his trial counsel's performance fell below the standard expected of criminal defense attorneys. Moreover, Selley has failed to demonstrate that any deficiencies in Mr. Smith's performance prejudiced his defense. The two-level distribution increase was

---

[1] The pertinent record documents in this case are filed on the docket of Selley's criminal case, United States v. Selley, 2:15-cr-1 (S.D. Ga. May 5, 2015), and many are not included in Selley's civil docket. Thus, for ease of reference and consistency, the Court cites to Selley's criminal docket in this Order and Report and Recommendation.

appropriate, given the facts before the Court and the applicable law. Therefore, Mr. Smith's decision to not object to the two-point enhancement was reasonable, and Selley has failed to establish a reasonable probability that any objection would have changed his sentence.

For these reasons set forth more fully below, I **RECOMMEND** this Court **DENY** Selley's Motion to Vacate, Set Aside, or Correct his Sentence for lack of jurisdiction under 28 U.S.C. § 2255(h). (Doc. 57.) Additionally, the Court **DISMISSES as moot** Selley's Motion to Compel, (doc. 54). Further, I **RECOMMEND** that the Court **DENY** Selley a Certificate of Appealability and *in forma pauperis* status on appeal and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

On February 5, 2015, the grand jury for the Southern District of Georgia returned an Indictment against Selley charging him with six (6) counts: receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count One); distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Counts Two through Five); and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Count Six). (Doc. 1.) Selley faced not less than five nor more than twenty years' imprisonment as to each of the receipt and distribution counts (Counts One through Five) and not more than twenty years' imprisonment as to the possession count (Count Six). (Doc. 2.)

However, Selley and his attorney, Mr. Smith, were able to negotiate a plea agreement with the Government whereby Selley agreed to plead guilty to Count Six of the Indictment, in exchange for the Government moving to dismiss the remaining charges. (Doc. 45.) Under the terms of the plea agreement, Selley promised to, among other things, acknowledge the factual basis of his plea, cooperate with the Government for a downward departure, waive his right to a

direct appeal (with limited exceptions), and waive his right to collaterally attack his sentence.

(Id.) Pertinently, Selley also agreed:

> [T]o not object to findings by the U.S. Probation Office that the material possessed involved a prepubescent minor or a minor who had not attained the age of 12 years as defined by U.S.S.G. § 2G2.2(b)(2); **that the offense involved distribution as defined by U.S.S.G. § 2G2.2(b)(3)(F)**; that the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence as defined by U.S.S.G. § 2G2.2(b)(4); that the offense involved the use of a computer as defined by U.S.S.G. § 2G2.2(b)(6); and that the offense involved 600 or more images as defined by U.S.S.G. § 2G2.2(b)(7).

(Id. at p. 4 (emphasis supplied).)  Selley also affirmed that Mr. Smith had represented him "faithfully, skillfully, and diligently" and that he was "completely satisfied" with Mr. Smith's legal advice and work on his case.  (Id. at p. 8.)  The Government agreed to move to dismiss the remaining counts, to not object to a recommendation that Selley receive a reduction in his offense level for acceptance of responsibility, and to consider whether Selley's cooperation qualified as "substantial assistance warranting a motion for downward departure."  (Id. at pp. 3–5.)

On April 28, 2015, Selley appeared before the Honorable Lisa Godbey Wood for a change of plea, or Rule 11, proceeding.  (Doc. 44.)  At the commencement of the hearing, Judge Wood explained that the Court understood that Selley wanted to change his plea and plead guilty to one of the counts pending against him.  (Doc. 60, p. 2.)  Judge Wood asked Selley if this was correct, and he responded that it was.  (Id.)  Judge Wood explained the purposes of the hearing, including making certain that Selley understood the case against him, ensuring that he was aware of the rights that he would give up if he pleaded guilty, and establishing that there was a factual basis for the plea of guilty.  (Id.)

Judge Wood then engaged in an extensive plea colloquy with Selley.  She explained that the decision to plead guilty was an important one, that the decision was entirely Selley's

decision, and that she wanted to be certain that he understood all of the important considerations that go into the decision. (Id. at pp. 2–3.) Judge Wood inquired whether anyone had forced Selley to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do. (Id. at p. 3.)

Judge Wood had Selley placed under oath before asking him a series of questions. (Id.) He was able to recount his personal information, including his age, the ages of his children, and his residence. (Id. at p. 4.) Selley testified that he completed the tenth grade, obtained his GED, and attended some college. (Id. at pp. 4–5.) Selley testified that he suffered from manic depression. (Id.) Judge Wood asked Selley whether he was currently taking medication for that condition, and he responded that he was. (Id. at pp. 5–6.) He also affirmed that his medications adequately addressed his condition. (Id. at p. 6.)

Judge Wood then asked Selley whether he was able to converse with or strategize about his case with Mr. Smith. Selley responded that he was able to do so.. When Judge Wood asked Selley to describe the purpose of the hearing, he responded that it was to punish him for the mistakes that he made and for him to accept responsibility as part of his plea bargain. (Id.)

Judge Wood explained to Selley that he was presumed innocent and the Indictment was not evidence of his guilt. (Id. at pp. 7–8.) She also explained that he did not have to plead guilty, and if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence during that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent. (Id. at pp. 8–10.) Judge Wood cautioned Selley he would be waiving these rights if he pleaded guilty. (Id.) She explained that, if she

accepted his guilty plea, there would be no right to trial of any kind, and that what would remain of his case would be the sentencing phase. (Id. at p. 10.) Selley stated he understood. (Id.)

Selley also stated he and Mr. Smith reviewed the Indictment together, that he had the opportunity to talk to Mr. Smith about the facts of his case and the underlying conduct, as well as about the proposed plea agreement, and that Mr. Smith had discussed the law pertaining to his case with him. (Id. at pp. 10–11.) When Judge Wood asked Selley if he was satisfied with Mr. Smith's representation, Selley responded, "Very much so." (Id. at p. 11.) Selley testified that he did not have any complaints whatsoever about Mr. Smith's representation.

Judge Wood reviewed the counts of the Indictment with Selley and discussed the essential elements of the crimes for which he was charged and what the Government would have to prove if he went to trial. (Id. at pp. 11–13.) Selley responded that he understood these elements and what the Government would have to prove if he went to trial and that he was pleading guilty because those elements were satisfied as to the count to which he was pleading guilty. (Id.) Judge Wood advised Selley of the penalties she could impose for the Count to which he was pleading guilty. (Id. at pp. 14–15.) Moreover, Judge Wood explained to Selley that, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. (Id. at p. 15.) Selley stated that no one had promised him an exact sentence, and Judge Wood explained that anyone's estimation of what his sentence might be would in no way bind the Court. (Id. at p. 15–16.)

Judge Wood affirmed with Selley that he had given Mr. Smith permission to negotiate a plea agreement with the Government. (Id. at p. 16.) She then asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement. AUSA Shane Mayes stated:

The agreement provides that Mr. Selley will plead guilty to Count 6 of the indictment. The Government will not object to a recommendation by the US Probation Office that Mr. Selley receive an appropriate reduction in the offense level for acceptance of responsibility under the sentencing guidelines.

Mr. Selley agrees to not object to findings by the US [P]robation [O]ffice that the material possessed involved a prepubescent minor or a minor who had not attained the age of 12 years as defined by Sentencing Guideline 2G2.2(b)(2), **that the offense involved distribution as defined by Sentencing Guideline 2G2.2(b)(3)(f)**, that the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence as defined by Sentencing Guideline Section 2G2.2(b)(4), that the offense involved the use of a computer as defined by Sentencing Guideline 2G2.2(b)(6) and that the offense involved 600 or more images as defined by Sentencing Guideline 2G2.2(b)(7).

Mr. Selley agrees to pay restitution for the full loss caused by his criminal conduct, which is not limited to the specific counts to which he is pleading guilty.

Mr. Selley agrees to provide full, complete and candid cooperation to the Government, and the Government in its sole discretion will decide whether that cooperation qualifies as substantial assistance that warrants the filing of a motion for downward departure or reduction in sentence.

At sentencing, the Government will move to dismiss any other counts of the indictment that remain pending against Mr. Selley and, Your Honor, the plea agreement provides the Government's standard appeal waivers which are contained on Page 6 of the agreement. If I may tender the agreement to [t]he Court.

(Id. at pp. 16–17 (emphasis supplied).) Judge Wood asked Selley if AUSA Mayes' summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was. (Id. at pp. 17–18.) Selley also stated he read the plea agreement before he signed it, and Mr. Smith answered any questions he may have had before he signed the agreement. Selley reaffirmed that no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement. (Id.)

Judge Wood then specifically addressed the direct appeal waiver with Selley, stating the following:

I do want to pick back up on something that Mr. Mayes alluded to, and that is, contained in this agreement that you're urging is a waiver of certain appellate rights.

It states "Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground." The only exceptions are three; that is, you would get a direct appeal right back only if one of these three things were to occur: Number One, if I were to sentence you above the statutory maximum, then you could appeal that directly; Number 2, if I were to sentence you above the advisory guideline range as found by me, then you could appeal that directly; or Number 3, if the Government were to file a direct appeal, then you, too, could file a direct appeal.

But otherwise, by virtue of this plea agreement, you waive all other direct appellate rights. Understand?

(Id. at pp. 18–19.) Selley stated he understood the appeal waiver provision. (Id. at p. 19.)

Judge Wood also explained that the proposed plea agreement contained a waiver of certain of Selley's collateral attack rights. She explained:

It states "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method including but not limited to a 28 USC Section 2255 motion."

The only exception to that waiver of collateral attack rights is that you do retain the right to collaterally attack your conviction and sentence based on a claim of ineffective assistance of counsel; do you understand that waiver?

(Id.) Selley replied that he understood the collateral attack waiver, and he confirmed that he had no questions about the plea agreement's waiver provisions. (Id.)

Judge Wood asked Mr. Smith and AUSA Mayes whether they were aware of any impropriety on the part of the Government in handling Selley's case, and they both responded no. (Id.) Judge Wood then asked Selley whether he wished to still plead guilty to Count Six of the Indictment because he was in fact guilty of that Count, and he answered in the affirmative. (Id. at pp. 19–20.) Judge Wood also asked Selley whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did. (Id. at p. 20) Judge Wood

determined that Selley was in possession of all of his faculties, that he understood the consequences of his plea, that he understood the application of the advisory Sentencing Guidelines, that he and Mr. Smith had discussed the facts and the law of the case, and that Selley's decision to plead guilty was "knowing" and "voluntary." (Id. at pp. 20–21.) Selley responded in agreement with Judge Wood's conclusions. (Id. at p. 21.)

Federal Bureau of Investigation ("FBI") Special Agent William Kirkconnell provided the Government's factual basis for the plea. (Id. at pp. 21–24.) Agent Kirkconnell explained that an investigation by a detective with the FBI Southeast Georgia Child Exploitation Task Force "identified an Internet protocol address for a computer that was **sharing child pornography** through the peer-to-peer program Shareaza." (Id. at p. 22 (emphasis supplied).) After the detective was able to download several images of child pornography from the computer associated with the IP address, a subpoena confirmed that the IP address was linked to a computer located at Selley's residence. (Id.) Investigators then obtained a search warrant for Selley's home, which they executed on October 23, 2014. (Id. at pp. 22–23.)

During the interview with Agent Kirkconnell incident to the search of Selley's home, Selley admitted to downloading and possessing child pornography. (Id. at pp. 23–24.) He specifically stated that he downloaded pornography using the peer-to-peer file sharing network Shareaza for about a year to a year and a half. (Id. at p. 23.) Agent Kirkconnell testified that a forensic examination of Selley's hard drive found 183 videos and 1,077 pictures, which were all sexually explicit pictures involving little children and that some of the children had not attained the age of 12 at the time the images were made. (Id. at pp. 23–24.) Agent Kirkconnell further testified that some of the images portrayed sadistic or masochistic conduct. (Id. at pp. 24–25.)

Upon questioning from Judge Wood, Selley testified that he did not dispute any of the testimony given by Agent Kirkconnell, and he admitted to the truth of Kirkconnell's testimony. (Id. at p. 26.) Judge Wood found that there was a factual basis for the plea of guilty, accepted Selley's plea, and adjudged him guilty of Count Six the Indictment. (Id. at p. 26–27.) Judge Wood advised Selley that the Probation Office would prepare a Pre-Sentence Investigation report ("PSI"), and the Court would schedule a sentencing hearing after the PSI was disclosed to the Government and the defense. (Id.)

Prior to Selley's sentencing hearing, United States Probation Officer Paul Skarupa prepared a PSI and detailed Selley's personal history and characteristics, as well as his offense conduct, and conducted a calculation of Selley's advisory Guidelines' range. Pertinently, Officer Skarupa calculated Selley's total offense level as follows:

| | Offense level | U.S.S.G. § (Nov. 2014) |
|---|---|---|
| Base offense level | 18 | 2G2.2(a)(1) |
| Material possessed involved prepubescent minors | +2 | 2G2.2(b)(2) |
| Offense involved distribution of child pornography | +2 | 2G2.2(b)(3)(F) |
| Offense involved material that portrays sadistic conduct or other depictions of violence | +4 | 2G2.2(b)(4) |
| Offense involved use of computer for possession, transmission, receipt, or distribution of child pornography | +2 | 2G2.2(b)(6) |
| Offense involved 600 or more images | +5 | 2G2.2(b)(7)(D) |
| Acceptance of responsibility | -2 | 3E1.1(a) |
| Timely notification of intent to enter guilty plea | -1 | 3E1.1(b) |
| **TOTAL** | **30** | |

(PSI, ¶¶ 15–20, 26–27.)

As to the two-level increase for distribution, Probation Officer Skarupa explained that, "[p]ursuant to U.S.S.G. §202.2(b)(3)(F), if the offense involved the distribution of child

pornography, the base offense level shall be increased by two levels. Agents were successful in downloading video files of child pornography from the defendant's computer IP address; further, the defendant admitted to downloading and distributing child pornography." (<u>Id.</u> at ¶ 17.) Probation Officer Skarupa also included in the PSI the fact that Selley had been using file-sharing program Shareaza to obtain child pornography. (<u>Id.</u> at ¶¶ 5, 8.) Based on a total offense level of 30 and a criminal history category of I, Probation Officer Skarupa concluded that Selley's Guidelines' range for imprisonment was 97 to 121 months. (<u>Id.</u> at ¶ 56.) Probation Officer Skarupa further indicated that the plea agreement significantly benefited Selley, as Selley would have faced an advisory Guidelines' range of 151 to 188 months' imprisonment if he had pleaded guilty as charged in the Indictment. (<u>Id.</u> at ¶ 57.)

Neither the Government nor Selley filed any objections to the PSI. However, Mr. Smith filed a lengthy sentencing memorandum arguing for a sentence below the Guidelines' range. (Doc. 47.) Ms. Smith relied upon the 18 U.S.C. § 3553(e) sentencing factors and argued that the child pornography Guidelines were empirically flawed in a variety of ways and that Selley's particular circumstances warranted a lower sentence than the Guidelines advised. (<u>Id.</u>) Mr. Smith contended that the Court should sentence Selley to 48 months' imprisonment. (<u>Id.</u> at p. 9.) In his arguments against application of the Guidelines, Mr. Smith contested, among other things, the Guidelines' increase of Selley's sentence for distribution. Mr. Smith contended, "[Mr. Selley] did not knowingly share files. Any distribution that occurred was the automatic result of the Shareaza program. As the Federal Trade Commission has explained, '[s]ome users may not understand the configuration of the P2P file-sharing software's 'shared folder' and may inadvertently share sensitive personal files residing on their hard drives.'" (<u>Id.</u> at 13 (citing Staff Report, Federal Trade Commission, *Peer-to-Peer File-Sharing Technology: Consumer*

*Protection and Computer Issues* 7 (2005).)  Mr. Smith argued that Selley's distribution was unintentional and a result of the nature and configuration of peer-to peer file sharing programs. (Id. at pp. 13–14.)  He also argued that the Sentencing Commission had no empirical basis for providing for a two-level distribution enhancement that is not for pecuniary gain.  (Id. at pp. 35–36.)  Mr. Smith acknowledged that the enhancement applied to cases where there was any distribution, but he challenged the appropriateness of an increased penalty to someone like Selley whose distribution was as a result of his use of a file sharing program.  (Id. at p. 36.)

At the sentencing hearing, Judge Wood asked Selley whether he had the opportunity to read and review the PSI and discuss it with Mr. Smith.  (Doc. 59, p. 2.)  Selley answered in the affirmative.  (Id. at p. 3.)  Mr. Smith and counsel for the Government stated that they had no objections to the factual statements or the application of the advisory Guidelines.  (Id.)  Judge Wood determined Selley's total offense level was 30 with a criminal history category of I, which called for a Guidelines' sentence of 97 to 121 months' imprisonment and five years to life on supervised release.  (Id.)

Judge Wood noted that she had read Mr. Smith's sentencing memorandum but asked if Mr. Smith or Selley would like to state anything further.  Mr. Smith then pointed out several factors which he contended warranted a sentence below the advisory Guidelines' range.  (Id. at pp. 4–7.)  Mr. Smith specifically addressed the two-level enhancement for distribution.  (Id. at pp. 6–7.)  He argued that, while the site that Selley used was a peer-to-peer network, Selley was not technologically savvy, and therefore, he did not know that others were downloading material from him.  (Id.)  Smith argued that the distribution enhancement and the enhancement for use of a computer were the "two that we have the most issue with, Your Honor . . . ."  (Id. at p. 7.)

The Government then called Detective Charles Woodall of the FBI task force to testify. (Id. at p. 9.)  After laying out his background in computer forensics and investigation of child pornography crimes, Detective Woodall described the Shareaza computer program that Selley used to download and share child pornography.  (Id. at pp. 10–20.)  Detective Woodall testified to the following pertinent facts:

1. Shareaza is a computer program that was written and produced to allow people to share files on the Gnutella network, (id. at p. 10–11);

2. Shareaza is "predominantly" used by the "child pornography community", (id. at p. 12);

3. When a computer user downloads the Shareaza program, the user must go through a series of screens to begin using the program, and those screens alert the user that they will be sharing files and to be careful about what files they share, (id. at p. 11);

4. "The whole concept of file-sharing is you have to share to get something. If you don't share files, then people will block you.  They won't let you get from them[]", (id. at p. 13);

5. The program gives the user control over what files the user will be sharing over the network and to specifically decide what files the user shares, (id. at p. 11);

6. In order to obtain a file on the network, a Shareaza user enters a query that will then search the shared files from all of the other Shareaza users who are online and return a list of files to the user.  The user then selects the files he wants to download, (id. at p. 12);

7. Detective Woodall and other agents were able to download child pornography from Selley that Selley was offering on the Shareaza network by using a modified version of the Shareaza program.  (Id. at pp. 12–13.)  This modified version gave other users the impression that the agents were sharing files so that the other users would share files with the agents, (id.);

8. When another user initiates a download of a user's file through Shareaza, the program provides a notification of the download to the user from whom the file is being downloaded, (id. at pp. 13–14); and

9.      Through forensics, Detective Woodall could determine that Selley
        watched the entirety of some of the videos depicting child pornography on
        his hard drive, (id. at pp. 17–19).

On behalf of the Government, Mr. Mayes argued that the Court should sentence Selley

within the Guidelines' range. (Id. at pp. 21–24.) Mr. Mayes contended that Selley's crime was

not a victimless one, and, to that end, he read a statement from a victim depicted in some of the

images Selley downloaded and viewed. (Id. at pp. 21–23.) That victim described the deep pain

and "never ending" exploitation she experiences because pictures of the "most terrifying

moments" of her life are being shared on the Internet. (Id. at pp. 22–23.) She particularly

described the continuing victimization she endures due to the fact that "the distribution of these

pictures grows bigger and bigger by the day and there is nothing [she] can do about it." (Id. at

p. 22.) Mr. Mayes also argued, based on Detective Woodall's testimony, that under the Shareaza

program, "If you don't give, you don't get. So [Selley] knew that he was making these images

available." (Id. at p. 23.)

Judge Wood then gave Selley an opportunity to speak, and he addressed the Court. (Id.

at pp. 25–26.) He contended, as he had to the Probation Officer, that he downloaded the

pornography and viewed the images in order to find images of a man who had brutalized him

and his sister for years and to "put a stop" to that individual's abuse. (Id. at p. 25.) However,

Detective Woodall had testified that Selley never told agents that one of the reasons he was

looking at the videos was to see if he could find himself in them. (Id. at p. 15.) Selley testified

that Woodall's testimony was a lie because he told Detective Woodall and Agent Kirkconnell of

his intentions during their interview of him. (Id. at pp. 25–26.)

After hearing from Mr. Smith, the AUSA, and Selley and having reviewed the PSI and

the sentencing factors of 18 U.S.C. § 3553, Judge Wood sentenced Selley to 97 months'

imprisonment. (Id. at p. 27.) Judge Wood stated that Selley had "earned that sentence." (Id. at p. 28.) She did not believe Selley's testimony that Detective Woodall lied on the stand and that that all Selley "was doing in watching these horrific videos, some of them to the very last second, was trying to catch a man who hurt him." (Id. at p. 27.) Judge Wood stated that Selley should understand how "every person that plays a part in reliving those horrific moments is a perpetrator and is prolonging unimaginable pain and shame." (Id. at p. 27.) Judge Wood saw no reason to depart from the sentencing range called for by the Guidelines, but she sentenced him at the low end of that range, given Mr. Smith's argument that the offense level enhancement for use of a computer is "antiquated." (Id. at p. 28.)

After his sentencing, Selley and Mr. Smith executed a Post-Conviction Consultation Certificate in which Mr. Smith certified that he met with Selley, explained to Selley the appellate process and his rights, advised Selley of the advantages and disadvantages of filing an appeal, and asked whether Selley was interested in appealing his conviction. (Doc. 53.) After this consultation, Selley "decided not to file an appeal." (Id.)

## DISCUSSION

In his Section 2255 Motion and supporting Brief, Selley argues that Mr. Smith rendered ineffective assistance by failing to object to Probation Officer Skarupa's conclusion that Selley's offense level should be increased by two levels under U.S.S.G. § 2G2.2(b)(3)(F). Selley argues that he did not distribute child pornography. (Doc. 57, pp. 3–4.) The Government responded to Selley's Motion, arguing that Mr. Smith's performance was not deficient because Selley's offense "unquestionably" involved the distribution of child pornography. (Doc. 61, pp. 6–7.) In his Reply, Selley argues that the Government did not meet its burden of proof at the sentencing hearing regarding the distribution enhancement. (Doc. 63, pp. 3–4.)

## I. Whether Selley's Ineffective Assistance of Counsel Claims have Merit

### A. Standards for Selley's Ineffective Assistance Claims

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). Furthermore, the right to effective assistance of counsel includes the right to representation free from conflicts of interest. Cuyler v. Sullivan, 446 U.S. 335, 348–50 (1980). A defendant's guilty plea, appeal waiver, or collateral attack waiver does not preclude an ineffective assistance of counsel claim premised on an involuntary and unintelligent plea. United States v. Puentes-Hurtado, 794 F.3d 1278, 1281, 1285 (11th Cir. 2005).

To prevail on a claim of ineffective assistance of counsel, Selley must demonstrate: (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 685–86. "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). Thus, if Selley cannot show prejudice, the Court need not determine whether defendant's allegations show his counsel's performance fell below an objective standard of reasonableness.

The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide

range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" <u>LeCroy v. United States</u>, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004) (second alteration in original)).  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690. Further, retrospective judicial scrutiny of counsel's performance "must be highly deferential" and must "eliminate the distorting effects of hindsight." <u>Id.</u> at 689.  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>LeCroy</u>, 739 F.3d at 1312 (quoting <u>Strickland</u>, 466 U.S. at 690).

"Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." <u>Id.</u> at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable." <u>Harrington v. Richter</u>, 562 U.S. 86, 112 (2011).  A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

Additionally, a movant is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991).  "The allegations must be factual and specific, not conclusory.  Conclusory allegations are simply not enough to warrant a hearing." <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1061 (11th Cir. 2011)

(citing San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011)). For a movant proceeding *pro se*, the court will liberally construe the pleading, but he or she "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). "An evidentiary hearing may be necessary where the material facts are in dispute, but a [movant] is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics." Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006) (citations omitted). Stated another way, "if a habeas petition does not allege enough specific facts, that if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." Chavez, 647 F.3d at 1060 (citing Allen v. Sec'y Fla. Dep't of Corr., 611 F.3d 740, 763 (11th Cir. 2010). Further, because solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977) (citing Machibroda v. United States, 368 U.S. 487, 495–96 (1962), and Price v. Johnston, 334 U.S. 266, 286–87 (1948)).

### B.    Sentencing Guidelines Section 2G2.2(b)(3)(F)

The Sentencing Guidelines applicable at the time of Selley's sentencing provided for a two-level increase in an offense level if the defendant's child pornography offense involved distribution. U.S.S.G. § 2G2.2(b)(3)(F) (2014). The application notes define "distribution" as:

> [A]ny act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2, comment n.1.[2]  Conversely, Section 2G2.2(b)(1) provides for a two-level reduction if the defendant only solicited, or sought to receive, child pornography.  U.S.S.G. § 2G2.2(b)(1).

The Eleventh Circuit has repeatedly held that the distribution enhancement applies when a defendant allows others to download child pornography through a peer-to-peer file-sharing network.  United States v. Spriggs, 666 F.3d 1284, 1287 (11th Cir. 2012) (distribution element of U.S.S.G. § 2G2.2(b) satisfied because "[a]llowing files to be accessed on the Internet by placing them in a file-sharing folder is akin to posting material on a website for public viewing.  When the user knowingly makes the files accessible to others, the distribution is complete."); see also United States v. Creel, 783 F.3d 1357, 1360 (11th Cir. 2015); United States v. Cubero, 754 F.3d 888, 895 (11th Cir. 2014); United States v. Cuellar, 617 F. App'x 966, 970 (11th Cir. 2015); United States v. Beasley, 562 F. App'x 745, 752 (11th Cir. 2014); United States v. Nelson, 442 F. App'x 496, 498 (11th Cir. 2011); United States v. DuFran, 430 F. App'x 855, 857 (11th Cir. 2011); United States v. Riffe, 406 F. App'x 341 (11th Cir. 2010); United States v. Williams, 396 F. App'x 662, 664 (11th Cir. 2010).  Indeed, the Eleventh Circuit has found that a defendant's use of the very program Selley used in this case satisfies the distribution enhancement.  See Spriggs, 666 F.3d at 1286; United States v. Petersen, 426 F. App'x 852, 853 (11th Cir. 2011) (defendant admitted to downloading and installing Shareaza program and "child pornography was downloaded by authorities from [defendant's] computer in a folder that was open to share

---

[2]  In 2016, the Sentencing Commission revised Section 2G2.2(b)(3)(F) to provide for a two-level increase "[i]f the defendant knowingly engaged in distribution."  Regardless, Selley's conduct in this case meets the narrower definition, as well as the definition in effect at the time of his sentence.  United States v. Monetti, 705 F. App'x 865 (11th Cir. 2017) (two-level increase in defendant's offense level warranted under either the narrower amended version of the Sentencing Guidelines or the version in effect at sentencing, where defendant participated in peer-to-peer file sharing program and defendant understood that files in the shared folder could be downloaded by other users, defendant kept the program running on his computer, and defendant did not dispute that he kept child pornography in his shared folder).

files with any computer with which it was connected. Based on this record, the district court did not err in finding that [defendant] committed distribution within the meaning of section 2G2.2(b)(3)(F).") Moreover, where a defendant uses a peer-to-peer file-sharing network to obtain images and make some of the images available to other users, he is not entitled to a reduction in offense level under U.S.S.G. § 2G2.2(b)(1). Cubero, 754 F.3d at 895; Beasley, 562 F. App'x at 751.

### C. Selley's Claim of Ineffective Assistance

Selley argues that Mr. Smith should have objected to the two-level enhancement under Section 2G2.2(b)(3)(F), because Mr. Smith "knew that [Selley] was not guilty of distribution at all." (Doc. 57-1, p. 4.) Selley contends that he only "installed a file-sharing program on his computer that gave others free access to the images", he did not knowingly distribute the images, and he "never admitted to the conduct giving rise to the enhancement." (Id.) (emphasis in original). Selley also contends that, "to be able to distribute the images you need to use the computer. Petitioner was givien [sic] the enhancement under U.S.S.G. § 2G2.2(b)(6), use of a computer. But at sentencing the Judge removed that enhancement. The computer was never used for transmission of the materials, but just to storing them." (Id.) Selley's arguments are blind to the actual facts of his case, ignore his own sworn admissions and the uncontroverted testimony of others, and disregard binding precedent.

Selley stipulated in his plea agreement that his "offense involved distribution as defined by U.S.S.G. § 2G2.2(b)(3)(F)." (Doc. 45. p. 4.) At his plea hearing, AUSA Mayes specifically recounted this stipulation in his summarization of the plea agreement. (Doc. 60, pp. 16–17.) Selley stated, under oath, that AUSA Mayes' announcement was consistent with what Selley signed and agreed to, that he read the plea agreement before he signed it, and that Mr. Smith

answered any questions Selley had regarding the agreement. (Id. at pp. 17–18.) Agent Kirkconnell testified that Selley admitted to him that he used the peer-to-peer file sharing network Shareaza for approximately a year to a year and a half. (Id. at p. 23.) Kirkconnell also testified that agents were able to obtain images of child pornography from Selley through Shareaza's file-sharing network. (Id. at p. 22.)

Selley admitted to the truth of Kirkconnell's testimony and told Judge Wood that he did not dispute any of Kirkconnell's statements. (Id. at p. 26.) He also responded, "Very much so[,]" when Judge Wood asked if he was satisfied with Mr. Smith's representation, and he testified that he did not have any complaints whatsoever with Mr. Smith's representation. (Id. at p. 11.) The Court should reject Selley's attempts to contradict his own sworn testimony and plea hearing declarations. Blackledge, 431 U.S. at 73–74 (because solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").

The sentencing phase proceedings of Selley's case further confirm the validity of the distribution enhancement and the reasonableness of Mr. Smith's representation. In the PSI, Probation Officer Skarupa stated, "Agents were successful in downloading video files of child pornography from the defendant's computer IP address; further, the defendant admitted to downloading and distributing child pornography." (PSI, ¶ 17.) Selley stated at the sentencing hearing that he had the opportunity to read and review the PSI and discuss it with Mr. Smith. (Doc. 59, p. 2.) Selley did not object when Mr. Smith stated that there were no objections to the PSI's facts and conclusions.

At the sentencing hearing, Detective Woodward testified that Selley downloaded and installed the Shareaza program to his computer and that this program is predominantly used by the child pornography community to share child pornography. (Id. at pp. 10–14.) Woodward further testified that Selley had to share files to get files and that if Selley did not share files, other users would have blocked him. (Id.) During installation, the Shareaza program warned Selley that he would be sharing files with other users, and Selley specifically controlled what files on his computer he wished to share with other users. (Id.) The program notified Selley when another user was downloading files from his computer and what files were downloaded. Selley made child pornography available for other users to download. (Id.) Indeed, his providing child pornography files to undercover law enforcement officers led to federal charges being levied against him. (Id.)

Under these facts and the above-cited Eleventh Circuit precedent, it would have been foolhardy for Mr. Smith to object to the two-level enhancement under Section 2G2.2(b)(3)(F). Mr. Smith had no obligation to advance an argument that had no legal merit. Diaz-Boyzo v. United States, 294 F. App'x 558, 560 (11th Cir. 2008) (counsel not ineffective for failing to pursue a non-meritorious issue.) Furthermore, Selley agreed that he distributed child pornography as part of his plea agreement. Thus, if Mr. Smith had objected to the distribution enhancement, he would have jeopardized the plea agreement and the benefits that Selley received from it. As Probation Officer Skarupa indicated, the plea agreement reduced Selley's Guidelines' exposure by approximately fifty-four months. (PSI, ¶ 57.) Further, despite the daunting facts and precedent that Selley's case presented, Mr. Smith did not do nothing. Rather, he filed a lengthy sentencing memorandum advancing numerous arguments challenging the Guidelines' treatment of child pornography and arguing against the appropriateness of the

Guidelines' recommended sentence in Selley's case. (Doc. 47.) Mr. Smith specifically challenged the propriety of the distribution enhancement. While these efforts were not successful in obtaining the below-Guidelines sentence that Mr. Smith argued for, they did compel Judge Wood to sentence Selley at the low end of the Guidelines' range. Selley has failed to establish Mr. Smith's efforts were outside of the range of competence demanded of attorneys in criminal cases. Hill, 474 U.S. at 56.

Moreover, even if Mr. Smith had rendered ineffective assistance, Selley has failed to demonstrate prejudice. In other words, Selley has failed to show a reasonable probability that the outcome of his case would have been different if Mr. Smith had objected to the distribution enhancement. Selley's arguments that he did not knowingly share child pornography and that he never admitted to doing so are thwarted by not only the testimony of Agent Kirkconnell and Detective Woodard, but also Selley's plea agreement and his sworn affirmations of that agreement. Moreover, Selley admits in his Section 2255 pleadings that he gave others access to his images of child pornography. (Doc. 57-1, p. 4.)

Selley argues that, because he did not charge others for access to his child pornography, he should not be held liable for distribution. (Id. (Selley "gave others free access to the images") (emphasis in original).) He contends that Eleventh Circuit precedent required him to have exchanged child pornography for a "valuable consideration" to receive an offense-level enhancement. (Doc. 62 (citing Spriggs, 684 F.3d at 1284, and United States v. Bender, 290 F.3d 1279 (11th Cir. 2002).) Selley misunderstands the Guidelines and the meaning of the word "distribution." Selley confuses the two-level enhancement he actually received under Section 2G2.2(b)(3)(F) and the five-level enhancement that he did not receive under Section 2G2.2(b)(3)(B). While the two-level enhancement applies to mere distribution, the five-level

enhancement applies when a defendant distributed child pornography for a thing of value. The cases which Selley cites and the arguments he makes are only applicable to that higher enhancement, which played no role whatsoever in his sentencing.[3] Under the plain meaning of the provision applicable to Selley's case, Section 2G2.2(b)(3)(F), Selley would have received a two-level enhancement for distributing child pornography, regardless of whether he did so for pecuniary gain or whether he received a thing of value in return. U.S.S.G. § 2G2.2(b)(3)(F) (2014) ("Distribution **other than distribution described in subdivisions (A) through (E)**, increase by 2 levels." (emphasis supplied)).

Selley also makes the odd argument that he only used a computer for storing child pornography and not for transmitting the images. (Doc. 57-1, p. 4.) He supports this argument by contending that Judge Wood removed his two-level enhancement for use of a computer. (Id.) Selley is mistaken. Judge Wood sentenced Selley at the low end of the Guidelines' range, because she found the use-of-a-computer enhancement "antiquated." (Doc. 59, p. 28.) However, she concurred with the Probation Officer that the use-of-computer enhancement was applicable under Section 2G2.2(b)(6) and that Selley's offense level was 30, resulting in a Guidelines' range of 97 to 121 months' imprisonment. (Id. at p. 3.) Furthermore, the evidence of record makes it abundantly clear that Selley used a computer to not only store child pornography but to also download and distribute child pornography. This evidence includes

---

[3] Given Detective Woodward's testimony that the premise of the file-sharing network that Selley used is that "you have to share to get something", Selley is perhaps fortunate that he did not receive a five-level enhancement. See Bender, 290 F.3d at 1286 (finding, under former version of Guidelines, "when a defendant trades child pornography in exchange for other child pornography, the defendant has engaged in 'distribution for the receipt, or expectation of receipt, of a thing of value'"). To be clear, the mere use of a peer-to-peer file-sharing network to download child pornography, which by default allows other users to access those same images, does not support the application of a § 2G2.2(b)(3)(B) enhancement absent "some other evidence, whether direct or circumstantial, that [the] defendant reasonably believed that he would receive something of value by making his child pornography files available for distribution . . . ." United States v. Vadnais, 667 F.3d 1206, 1209 (11th Cir. 2012). However, the Court need not decide whether Selley had such belief ,as he did not receive the five-level "thing of value" enhancement.

Selley's own admissions in the plea agreement, Agent Kirkconnell's testimony at the plea hearing (that Selley agreed with under oath), and Detective Woodard's uncontroverted testimony. Selley's conclusory allegations to the contrary lack any modicum of credibility.

For all of these reasons, the Court should **DENY** Selley's claims that his trial counsel rendered ineffective assistance of counsel.

## II. Whether Selley Successfully Challenges his Sentence

From Selley's initial Motion, it appeared that he only took issue with Mr. Smith's performance and that he did not directly attack the Court's application of the Guidelines. However, he appears to challenge his sentence directly in his Reply. (Doc. 62, p. 4 ("The Government did not meet its burden of proof to this and therefore the enhancement was applied in error.").) Thus, in abundance of caution, I will assess whether Selley has successfully attacked his sentence, as opposed to his counsel's performance at sentencing.

As an initial matter, Selley procedurally defaulted an attack on his sentence, because he did not challenge his sentence on direct appeal. Indeed, he did not file any appeal in this case. Rather, Selley filed a waiver of appeal indicating that he had consulted with Mr. Smith regarding an appeal and that Selley did not want to appeal. (Doc. 53.) In the Eleventh Circuit, under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (internal citation and punctuation omitted). The procedural default rule "'is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 504 (2003)).

A showing of "cause and prejudice" can overcome a defendant's default.  Id.[4]  More

specifically, a defendant can overcome "application of the procedural default bar by show[ing]

cause for not raising the claim of error on direct appeal and actual prejudice from the alleged

error."  Id. (citing Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (alteration in

original)).  To show cause for procedural default, a defendant must show that "some objective

factor external to the defense prevented [him] or his counsel from raising his claims on direct

appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365

F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause to

excuse a procedural default.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

However, a defendant does not clear the procedural default hurdle merely by invoking the phrase

"ineffective assistance" or making conclusory allegations about counsel's performance.  As the

Eleventh Circuit has explained:

> In order to [excuse procedural default], however, the claim of ineffective
> assistance must have merit.  [Greene v. United States, 880 F.2d 1299, 1305(11th
> Cir. 1989).]  To determine whether it does, we must decide whether the arguments
> the defendant alleges his counsel failed to raise were significant enough to have
> affected the outcome of his appeal.  Miller v. Dugger, 858 F.2d 1536, 1538 (11th
> Cir. 1988).  Appellate counsel is not ineffective for failing to raise claims
> "reasonably considered to be without merit."  Alvord v. Wainwright, 725 F.2d
> 1282, 1291 (11th Cir. 1984).

Id.  As discussed above, Selley's claim of ineffective assistance of counsel lacks merit.  At the

very least, given the facts and precedent, it was reasonable for Mr. Smith to consider that

challenging Selley's Section 2G2.2(b)(3)(F) enhancement would be meritless.  Further, Selley

has failed to show that any arguments Mr. Smith supposedly should have made would have

---

[4]  "Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself."  McKay, 657 F.3d at 1196 (citing Dretke v. Haley, 541 U.S. 386, 388 (2004)).  However, this exception is not applicable to Selley's case.

affected the outcome of his case.  In short, Selley has failed to meet the "cause and prejudice" necessary to excuse his procedural default.

In addition, Selley's plea agreement's comprehensive collateral attack waiver provides an independent and sufficient ground for the Court to dismiss any direct challenge Selley makes to the Court's application of the Guidelines.[5]  When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  It is well-settled that a waiver of appeal[6] and collateral attack provisions contained in a plea agreement are enforceable if the waiver is knowing and voluntary. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)).  "'To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver.'"  United States v. Mottola, 394 F. App'x 567, 568 (11th Cir. 2010) (quoting United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)).  "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error."  United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999).  "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous."  Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

---

[5] To be clear, the collateral attack waiver does not bar Selley's ineffective assistance of counsel claim discussed herein.

[6] "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence.  United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993).  Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.  Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

As detailed above, Judge Wood directly questioned Selley about the collateral attack waiver during the plea colloquy. (Doc. 60, p. 19.) Moreover, the scope of the collateral attack waiver covers challenges other than ineffective assistance of counsel. Further, the record, including Selley's sworn statements at the Rule 11 hearing, demonstrates that his guilty plea and his waiver of collateral were made knowingly and voluntarily. Indeed, he does not challenge the voluntariness of his plea in his Section 2255 Motion. Thus, to the extent that Selley attacks this Court's application of the Sentencing Guidelines, he waived that challenge in his plea agreement.

Further, even if Selley had not waived the right to collaterally attack his sentence, the Court should deny his arguments on the merits. As set forth above, the facts of Selley's case demonstrate that he distributed child pornography through a file-sharing program. Eleventh Circuit precedent clearly establishes that his distribution warrants a two-level offense enhancement pursuant to Section 2G2.2(b)(3)(F). Thus, Selley has failed to show that the Court committed any error in sentencing him, much less error warranting resentencing.

## III. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Selley leave to appeal *in forma pauperis*. Though Selley has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of the pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Selley a Certificate of Appealability, Selley is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of Rules Governing Section 2255 Cases. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Selley's Section 2255 Motion, (doc. 57), **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Selley a Certificate of Appealability and *in forma pauperis* status on appeal. The Court **DISMISSES as moot** Selley's Motion to Compel, (doc. 54).

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Selley and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA